A92A0765. PLATT v. NATIONAL GENERAL INSURANCE COMPANY.
(423 SE2d 387)

BIRDSONG, Presiding Judge.

Following denial of her motion for new trial, appellant Vanessa C. Platt has appealed the judgment entered in superior court, pursuant to jury verdict, in behalf of appellee/defendant National General Insurance Company.

Appellant was injured after a car in which she was a passenger struck a tree. She filed suit seeking certain PIP benefits from her father's insurance policy. In addition to asserting an affirmative defense to appellant's suit, appellee filed a counterclaim for declaratory judgment contesting the issue of appellant's residency and entitlement to uninsured motorist benefits under the policy. Appellant also sought declaratory judgment as to whether she was a resident relative entitled to uninsured motorist benefits. The PIP question was resolved and the remaining issues were tried before a jury. Appellant claimed she was a resident of her father's household at the time of the incident and therefore was covered by the policy. Appellee disputed that appellant was a resident of her father's household, and further asserted that, assuming she was such a member, nevertheless the policy was void due to fraud and misrepresentation by appellant's father in

failing to disclose on his insurance application that appellant was a member of his household. The jury was instructed to render a verdict upon written interrogatories. A verdict was returned that appellant was not a resident of her father's household at the time of the accident, and that the policy was not procured by fraud. *Held*:

1. Appellant asserts the trial court erred in admitting into evidence and allowing to be taken out with the jury during deliberation a statement of a witness to the accident. The major issue surrounding this witness' testimony is whether appellant told him, at the time of the accident, that she was residing with her mother in Alpharetta or with her father in Snellville, Georgia. The trial court admitted the witness' pretrial statement as an exception to the hearsay rule and allowed it to go to the jury on the basis that, after a proper foundation was established, it was offered under the legal theory of past recollection recorded. See generally Green, Ga. Law of Evidence (3rd ed.), Witnesses, § 130; Agnor, Ga. Evidence (2d ed.), §§ 4-10; 11-38.

The witness apparently had given his oral statement to an insurance investigator, which was recorded and promptly transcribed. Four days later, the transcript of the statement was presented to the witness for authentication. The last page of the transcript contains the following self-verifying statements in question and answer form: "Q. All right, is everything you have said been true and accurate to the best of your ability? A. To the best of my knowledge, that's correct. Q. Have you understood all of my questions? A. Yes. Q. You understood this conversation was recorded? A. Right." The transcript was signed by the witness, dated, and witnessed by the investigator immediately following this conclusory statement: "I have read completely these sixteen pages and agree that it is my statement."

As the transcript of the witness' statement was neither offered nor admitted in evidence as a business record, for purposes of impeachment, or as part of the res gestae pertaining to the accident, we are not required to adjudicate these issues on appeal. Further, although the transcript contains certain irrelevant information, as no motion was made to excise this information from the transcript neither is this issue preserved for appellate adjudication.

(a) The record reflects appellee apparently allowed the witness to examine his statement transcript prior to trial and; by that procedure, attempted to refresh the witness' recollection of appellant's residency statements so that the witness could testify thereto. Such a form of refreshment or revival of present recollection is acceptable under OCGA § 24-9-69. However, this procedure failed to refresh adequately the witness' recollection. Thus, after testifying on direct examination that he was "sure" he had asked appellant, at the scene of the accident, where she lived and he "believe[d] she said Alpharetta," the witness clarified these statements by testifying during cross-examina-

tion that he did not now remember appellant telling him she lived in Alpharetta when he pulled her out of the car. Thereafter, appellee commenced to lay a foundation for the admission of the witness' statement as past recollection recorded. During the course of this procedure, the witness was questioned concerning and attempted to explain the current extent of his recollection regarding the matter as follows: "I'm sure that I asked her where she lived when we were there. And as far as an answer, I can't tell you what she said any time during the whole time that we were out there." On further redirect examination, the witness testified his recollection of the events the night of the incident would have been clearer and fresher in March 1990 (when he gave and later initialed his transcribed statement) than they are today (June 1991). He also was asked whether it was his testimony at trial that appellant had told him she was from Alpharetta, and his response was "I wish I knew." He immediately added that *"I'm sure I told him* [the insurance investigator] *that she told me she lived in Alpharetta.* But this long a time, I actually cannot recall whether she told me that or not." (Emphasis supplied.) The combined effect of the above testimony was not only to confirm the witness' lack of in-court recall but to constitute the witness' in-court verification of his knowledge of the *correctness* of the memorandum as to the relevant information therein recorded, that is, he adequately testified to his willingness "to swear positively from the paper," within the meaning of OCGA § 24-9-69. See *Clackum v. State,* 55 Ga. App. 44, 49 (7) (189 SE 397); Green, supra at § 130. " 'A witness can not, without finally testifying from his recollection of the facts, swear from a written memorandum without showing that he made the memorandum or at some time knew it to be correct.' " *Proctor & Gamble Co. v. Blakely Oil &c. Co.,* 128 Ga. 606, 617 (2) (57 SE 879). A witness may have knowledge of the correctness of the memorandum "from having made the memorandum, or from having examined it when he had a distinct recollection of the facts to which it referred and at that time found it to be correct." Green, supra at 257; compare *Smith v. City of Atlanta,* 22 Ga. App. 511, 512 (4) (96 SE 334). "If the witness made the memorandum himself, his knowledge of its correctness is sufficiently shown by his testimony that he remembers making a correct record of the facts and recognizes as such record the memorandum produced." Green, supra at 257-258. But, "[i]n order for a memorandum to be used as a record of past recollection, the testimony must show that the witness, when his recollection of the facts was fresh, made or checked the memorandum." Green, supra at 258. Under the attendant circumstances, the signed and initialed, self-verifying transcript of the witness' recorded oral testimony was at least the effective equivalent of a memorandum personally prepared by a witness for purposes of establishing past recollection recorded. Thus

when the witness testified he was sure he told the investigator the appellant lived in Alpharetta, in essence he was vouching that *the transcript of his personally made oral statement correctly recorded what he had stated regarding the matter at issue.* Further, as testified to by the witness, his recollection of the events was both *clearer and fresher* at the time the statement was given and transcribed, and the transcript on its face reveals, as testified to by the witness, that it had been completely read, signed, each page initialed, and its correctness agreed to by the witness on March 20, 1990, only 18 days after the incident. Accordingly, although it would be preferable to ask the witness specifically at trial whether he had told the truth as he then perceived it when he gave his oral statement and whether the transcript constituted an accurate recording in toto of what he had personally stated, the trial court nevertheless could find an adequate foundation had been established to qualify the transcribed statement as past recollection recorded pursuant to OCGA § 24-9-69.

(b) Although the documents used to *refresh or revive* a witness' present recollection generally cannot be admitted in evidence (*Nationwide &c. Ins. Co. v. Rhee,* 160 Ga. App. 468, 472 (10) (287 SE2d 257); compare *Woodward v. City Council &c.,* 117 Ga. App. 857 (162 SE2d 304)), when a foundation is established for the use of the documents for purposes of past recollection recorded, both the testimony of the witness as to the relevant facts contained in the document (*Cooper v. State,* 174 Ga. App. 464, 466 (3) (330 SE2d 402); *Mabry v. Henley,* 123 Ga. App. 561, 566 (1c) (181 SE2d 884); *Bridges v. Mutual &c. Acc. Assoc.,* 49 Ga. App. 552 (2) (176 SE 543); *Veal v. Wood,* 29 Ga. App. 94 (1) (113 SE 818)) and the document itself (*Black &c. v. Thornton,* 30 Ga. 361, 378 (1); *Clackum v. State,* supra at 50 (7); *Stansall v. Columbian Nat. Life Ins. Co.,* 32 Ga. App. 87, 90 (122 SE 733) (dictum); *Bank of South Carolina v. Brown,* Dudley 62, 64 (Ga. Superior Ct.) (dictum); Agnor, supra at § 11-38, p. 353; cf. *Southern R. Co. v. Cowan,* 52 Ga. App. 360, 368 (6) (183 SE 331) (card was inadmissible only because a proper foundation for past recollection recorded had not been laid); but see *Ingram v. Hilton &c. Co.,* 108 Ga. 194 (3) (33 SE 961); *Woodward,* supra; Green, supra at 258 are admissible. However, care should be taken to avoid needless repetition and cumulativeness in the admission of such evidence.

(c) Appellee relies inter alia upon *Vinyard v. State,* 177 Ga. App. 188 (338 SE2d 766) to support the contention that not only is the document admissible but it should be allowed to go out with the jury during the deliberation. We find *Vinyard,* supra, and *Whitehead v. Seymour,* 120 Ga. App. 25, 27 (2) (169 SE2d 369) to be distinguishable from and not controlling in this case. Unlike the letter in *Vinyard* and the ordinances in *Whitehead,* the transcript in this case was in fact a "reduction to writing of an oral statement" and was unequivo-

cally utilized as a "statement in lieu of testimony," albeit on the theory of past recollection recorded. *Vinyard*, supra at 190. By way of dictum in *Stansall*, supra at 90, this court opined that past recollection recorded documents can be read aloud by the witness and *shown* to the jury or otherwise put in evidence. However, contrary to appellee's assertions, *Stansall* does not establish that such documents should also be allowed to go out with the jury during deliberation. It is a far different matter for the proponent, after laying a proper foundation for admissibility as past recollection recorded and placing the transcript or document in evidence, to cause it to be *read* to the jury from the witness stand or *shown* by passing it around the jury box under controlled conditions or by exhibiting it in open court in the form of an enlarged reproduction than to allow the document to accompany the jury into the deliberation room. In the latter situation a fair risk exists the jury will place undue emphasis on the statement being used in lieu of testimony merely because it accompanies them into the deliberation room for their reading at will. Transcripts, such as the one under review, which depend entirely for their value on the credibility of the maker and have been introduced *solely* for purposes of past recollection recorded are substantially equivalent in effect to interrogatories and depositions (compare *Royals v. State*, 208 Ga. 78, 81 (2) (65 SE2d 158); *Laster v. State*, 163 Ga. App. 294, 295 (2) (293 SE2d 75)). "Such written testimony may have an unfair advantage over oral testimony by speaking to the jury more than once," and it is error to permit the jury to take such written testimony into the jury room. *Royals*, supra; but compare *Waldrup v. Baker*, 180 Ga. App. 121 (348 SE2d 566) (statements admissible as prior inconsistent or prior consistent statements of a witness and admissible as substantive evidence). Accordingly, under the facts of this case, the trial court erred in allowing the transcripts to accompany the jury into the deliberation room over timely and specific objection.

However, the record reveals that, before the transcript was admitted in evidence and allowed to accompany the jury, the witness testified as to its relevant content at length and without objection. As this testimony was legal in itself because of its probative value but was inadmissible until the proper foundation for its admissibility had been laid, failure to object timely and specifically to its admissibility due to want of adequate foundation constituted waiver. Compare *Mable v. State*, 261 Ga. 379, 381 (1) (405 SE2d 48) with *Patton v. Bank of LaFayette*, 124 Ga. 965 (7) (53 SE 664); see *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395). As there was before the jury considerable unstricken witness testimony regarding appellant's residency statements in the transcript, for example, that "the girl actually told me she lived in Alpharetta herself," any error caused by allowing the transcript into the jury room was harmless. We will not

grant a new trial or reverse a case for error unless it is shown that the error is harmful, and evidence is harmless where evidence of the same fact has been admitted and is legitimately before the jury. *Young v. State*, 191 Ga. App. 651, 653 (2) (382 SE2d 642); see generally OCGA § 9-11-61.

2. Appellant asserts that the trial court erred by allowing the issue of fraud and misrepresentation in the procurement of the policy to be considered by the jury, and by charging the jury on the issues of fraud and misrepresentation, and as to the general law of contracts.

The evidence that appellant's father signed an application for insurance that did not list appellant as a member of his household had some independent relevancy. From this evidence, the jury could reasonably infer that as of the date that the application was filled out by appellant's father, appellant was not a resident of his household. Once appellant's status as a nonresident of her father's household was established, such status could be presumed to continue until the contrary was established. See *Esco v. Jackson*, 185 Ga. App. 901, 906 (2) (366 SE2d 309). Thus, the evidence regarding the failure to list her name as a member of the household on the insurance application was properly before the jury for consideration. Georgia rules of evidence favor the admissibility of any relevant evidence, no matter how slight its probative value; even evidence of doubtful relevancy or competency should be admitted and its weight left to the jury. *West v. Nodvin*, 196 Ga. App. 825, 828 (3b) (397 SE2d 567). And we will not reverse the correct decisions of the trial court regardless of the reasons given therefor. *National Consultants v. Burt*, 186 Ga. App. 27, 28 (2) (366 SE2d 344).

As uninsured motorist insurance coverage can be rejected (OCGA § 33-7-11), it is not a form of mandatory insurance coverage to which the defense of misrepresentation would be precluded as a matter of public policy. Compare *Stepho v. Allstate Ins. Co.*, 259 Ga. 475 (383 SE2d 887); see also *Clabo v. Tennessee &c. Ins. Co.*, 202 Ga. App. 110 (413 SE2d 476). The cases cited by appellant, including *Pearce v. Southern &c. Ins. Co.*, 246 Ga. 33 (268 SE2d 623); *Georgia Farm &c. Ins. Co. v. Phillips*, 251 Ga. 244 (304 SE2d 725); and *Mercer v. Woodard*, 166 Ga. App. 119 (303 SE2d 475), which do not pertain to the fraud and misrepresentation defense in cases involving uninsured motorist coverage, are distinguishable and not controlling. Accordingly, the fraud and misrepresentation defense was properly submitted to the jury.

Further, the jury returned a verdict, which included inter alia a finding, by way of interrogatories to the jury, that "we, the jury, do not find that the policy in question was procured by fraud." As the jury returned a verdict in favor of appellant as to the issue of fraud, we find that and appellate issues pertaining to the admission of evi-

dence and the charges given regarding fraud or misrepresentation were rendered moot. Moreover, we find entirely speculative appellant's contention that the collateral effect of the issue of fraud being heard by the jury resulted in a finding of nonresidency. As above discussed, the manner in which the application was filled out had some relevancy regarding the issue of residency; and, in any event, this court will not speculate as to the manner in which the jury reached its actual verdict, or to its conclusions as to the interrogatories submitted to it (submitted incidentally without objection as to their form by either side). *Dimauro v. State*, 185 Ga. App. 524, 525 (3) (364 SE2d 900). Suffice it to state that appellant has failed to affirmatively establish by the record an existence of prejudicial error warranting case reversal. An appellant must show both error and harm to prevail. *Baker v. Baker*, 194 Ga. App. 477, 480 (390 SE2d 892).

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED SEPTEMBER 8, 1992 —
RECONSIDERATION DENIED OCTOBER 6, 1992 — 

*J. Douglas Sexton*, for appellant.

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Savell & Williams, Richard G. Farnsworth, Delores A. Young*, for appellee.